# HOME EQUITY LINE AGREEMENT, DISCLOSURE STATEMENT AND NOTE

Date: April 13, 2007

Loan Number: [redacted]

Borrower: Frank E. Torok and Joann M. Torok

Property Address: 5201 Stansfield Dr
Zionsville, PA 18092

**CREDIT TERMS SUMMARY**

Maximum Credit Line: $ 93,850.00

ANNUAL PERCENTAGE RATE: 9.125%,
Daily Periodic Rate: 0.0250%,  Index: 8.250%,
Lifetime Cap: 18.000%,  Margin: 0.875%

In this Agreement, "I, me, my, us, we, our, Borrower and Co-Borrower" refer to each and all persons who sign this Agreement. The words "you, your and Lender" refer to   Quicken Loans Inc.   (hereinafter referred to as "Lender"). The word "Account" means the Home Equity Line of Credit established in my name. The word "Agreement" means this Home Equity Line Agreement, Disclosure Statement and Note. The Lender's address is 20555 Victor Parkway, Livonia, MI  48152.

If this is a joint account, all Borrowers must sign this Agreement and each will be individually responsible and liable for the entire Account balance.

**1. TERMS OF THIS AGREEMENT:** Subject to all terms of this Agreement, I understand that Lender will make loan advances up to my Maximum Available Credit for   10   years from the date of this Agreement (the "Draw Period"). The Maximum Credit Line is the amount stated above. The Maximum Available Credit is the Maximum Credit Line less the sum of all unpaid advances. After the Draw Period, Lender will not make any additional loan advances and I will be required to pay off the existing loan balance under the Account as described below in Section 7(b). I will pay off this loan balance in full within   20   years from the last day of the Draw Period. This   20   year period shall be called the "Repayment Period."

**2. LOAN ADVANCES:** Upon signing this Agreement, Lender will open an Account in my name. I will be able to obtain loan advances on this Account by requesting an advance over the telephone.

I understand that Lender may (but is not required to) offer me additional methods for requesting a loan advance such as home equity line of credit checks. If Lender does provide additional methods, I understand that Lender may offer these new access methods in lieu of requesting a loan advance over the telephone. If this occurs, Lender will notify me in advance of the terms and procedures for such additional methods.

If Lender is prohibited by federal law from making loan advances to me under this Agreement until three (3) business days after this Agreement has been signed, Lender will wait until that Period has expired before giving me access to this Account. All loan advances together will be considered a single, consolidated loan and will be referred to as the Principal. For purposes of this section, the words "Business Days" mean any day other than a Sunday or legal holiday.

Lender may, at its sole option, not honor any request for an advance:

a)  which is more than the Maximum Available Credit at that time,
b)  which is intended to be used in payment of all or part of the amount I owe Lender on the Account,
c)  if I am in default, as defined in Section 21, or
d)  if my Account is frozen or restricted in accordance with Section 20.

Lender may make a loan advance from my Account and add to the unpaid Principal Balance any amounts Lender may pay on my behalf for the Closing Costs, if any, in Section 14 and such other charges related to my Account as Lender believes necessary to protect Lender's or my rights.

**3. PROMISE TO PAY:** I promise to pay the amount of all Principal, finance charges, late charges, dishonored check charges, and other charges and costs (including all costs of Lender in securing, perfecting and enforcing its lien) that may be due under this Agreement or under the Security Agreement signed in connection with this Account, including all charges that may exceed the Maximum Credit Line as provided for in this Agreement. All past due amounts shall be due and payable immediately upon demand by Lender.

**4. STATEMENTS:** At the end of each monthly billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed, Lender will send me a statement (the "Statement") showing the activity in my Account during the cycle and the minimum amount (the "Minimum Monthly Payment") I must pay by the due date stated thereon.

**5. PREPAYMENT:** I may prepay my Account balance in whole or in part at any time, however, I must pay at least the Minimum Monthly Payment as stated in Section 7 below.

**6. TERMINATION:** I may terminate this Account at any time, by notifying Lender in writing that I want to terminate this Account and paying all amounts that are due under this Agreement or will become due with the passage of time. If I terminate this account within   0   years from the date of this Agreement, then I will be charged a termination fee in the amount of $ 0.00.

**7. MINIMUM MONTHLY PAYMENTS:** The Billing Cycle will end on the  10th  of each month or if the  10th  is not a business day, then on the last business day preceding the  10th  of the month. For purposes of this section, the words "Business Day" mean any day other than a Saturday, Sunday or legal holiday. I must pay my Account balance in amounts no less than the following Minimum Monthly Payments:

(a) Payments During the Draw Period: During the Draw Period, I will pay a Minimum Monthly Payment equal to all accrued finance charges, plus any fees or other charges assessed during the current billing cycle rounded up to the nearest penny. In addition to the Minimum Monthly Payment, I will pay all amounts past due and any amount in excess of my Maximum Credit Line.

(b) Payments During Repayment Period: During the Repayment Period, I will pay a Minimum Monthly Payment which shall be equal to the sum of: (1)  1/240th  of the Principal balance as of the closing date of the billing cycle in which the Draw Period terminates; and (2) all accrued finance charges and any other fees or charges assessed during the current billing cycle. In addition to the Minimum Monthly Payment, I will pay all amounts past due and any amount in excess of my Maximum Credit Line.

(c) Application of payments: All payments shall be applied in the following order: finance charges, all other fees and charges, then to Principal.

**8. PERIODIC FINANCE CHARGES:** All loan advances to my Account are subject to Finance Charges, which accrue from the date the loan advance is posted to my Account until the date the loan advance is paid in full. There is no grace period during which I may repay a loan advance without incurring a Finance Charge. Lender calculates the Finance Charges on my Account by multiplying the Daily Periodic Rate by the Daily Balance of my Account. Other than my first billing cycle, there will be only one Daily Periodic Rate during a billing cycle (Section 9 ANNUAL PERCENTAGE RATE provides how the ANNUAL PERCENTAGE RATE, and therefore the Daily Periodic Rate, is determined.) My first billing cycle may have more than one Daily Periodic Rate. To get the Daily Balance, Lender takes the beginning Principal balance each day, adds any new loan advances and subtracts any payments of, or credits to, Principal. The Finance Charges for each day in the billing cycle are added together resulting in the Periodic Finance Charge for that billing cycle. Finance charges, late charges, dishonored check charges and other charges which are not added to the Principal balance and any payments of those charges are excluded from the Finance Charge calculation.

**9. ANNUAL PERCENTAGE RATE:** The Account is a variable rate plan, and the Daily Periodic Rate assessed may change monthly based on changes in the Index. The "Index" is the "Prime Rate" as published by "The Wall Street Journal," as of the first day of the billing cycle or, if no Index is published that day, then the most recent Index published prior to that day. If "The Wall Street Journal" publishes a range of Prime Rates on any day, then Lender will use the highest rate published. If "The Wall Street Journal" ceases to publish a Prime Rate, then Lender, in its sole discretion, may substitute a comparable Index. The ANNUAL PERCENTAGE RATE for any given billing cycle will be the Index plus the Margin.

A change in the Index will result in a change to the ANNUAL PERCENTAGE RATE and Daily Periodic Rate. The ANNUAL PERCENTAGE RATE includes only interest (Finance Charges) and no other costs of the Account. The ANNUAL PRECENTAGE RATE and Daily Periodic Rate may increase or decrease in accordance with this section. An increase or decrease to the ANNUAL PERCENTAGE RATE and the Daily Periodic Rate will increase or decrease your Minimum Monthly Payment.

The ANNUAL PERCENTAGE RATE will never exceed the lesser of (a) the Lifetime Cap that is stated on the first page of the Agreement or (b) the maximum rate that may be charged under applicable laws. If the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Account exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from you which exceeded the permitted limits will be refunded to you. Lender may choose to make this refund by reducing the Principal owed under this Agreement or by making a direct payment to you. The Index, Margin, ANNUAL PERCENTAGE RATE and Daily Periodic Rate on the date of this Agreement are stated on the first page of this Agreement.

[N/A](Applies only if checked) Notwithstanding the foregoing, the ANNUAL PERCENTAGE RATE and Daily Periodic Rate stated on the first page of this Agreement are discounted and do not reflect the current value of the index on the date of this Agreement. If these terms were not discounted, the ANNUAL PERCENTAGE RATE would be   N/A   and the Daily Periodic Rate would be   N/A  . These discounted terms will remain in effect for the initial   N/A   of the term of the Account, after which time the foregoing method of determining the ANNUAL PERCENTAGE RATE and Daily Periodic Rate will take effect and remain in effect for the remainder of the Account's term.

**10. LATE FEES:** Lender will charge me a late fee for any payment that is not received by Lender within Ten days of its due date. This fee will be equal to Five and No-Thousandths percent ( 5.000%) of the Principal and Finance Charge payment that is due .

**11. ANNUAL FEE:** Lender will charge me an annual fee of $75.00 beginning on the first anniversary of my Account and on each Anniversary thereafter. The annual fee will not be refunded if the Account is terminated or frozen before the end of any annual period, unless applicable law provides otherwise.

**12. DISHONORED CHECK CHARGE:** If any payment I make on my Account is by a check that is dishonored, for any reason, then Lender has the right to charge me a dishonored check charge equal to $ 0.00.

**13. OVER LIMIT FEE:** If during any Billing Cycle, I exceed my Credit Line, then Lender may charge me an Over Limit charge of $ 0.00 . This fee will be charged regardless of Lender's decision to honor a check that created the Over Limit.

**14. FINANCE and CLOSING COSTS:** As itemized in the following list, I agree to pay charges as a condition of Lender opening my Account. Any amounts for these items advanced under the Account will be treated as Principal.

| Finance Costs: | Amount: |
|---|---|
| Flood Life of Loan Coverage | $5.00 |
| Settlement Fee | $225.00 |
| Express Mail/Courier Fee | $45.00 |
| Finance Cost Totals : | $275.00 |

| Closing Costs: | Amount: |
|---|---|
| Appraisal/Valuation | $9.00 |
| Flood Certification | $10.50 |
| Title Search Fee | $45.00 |
| Title Insurance | $45.00 |
| Recording Fees | $58.00 |
| Lender Paid Fees (Credit) | $442.50 |
| Closing Cost Totals: | $167.50 |
| Total Costs: | $0.00 |

**15. TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges for the Account.

**16. PROPERTY INSURANCE:** Under the Security Agreement, I must obtain property insurance in such amounts and against such risks as Lender may reasonably require with the insurance policy naming Lender, its successors and/or assigns, as loss payee. I may obtain property insurance (including flood insurance, when required) from any agent, broker or other person of my choice. However, for reasonable cause, Lender has the right to refuse to accept any insurance company or policy I present to Lender.

**17. COLLECTION COSTS:** Except in Wisconsin, if Lender refers my Account to an attorney or collection agency for collection, I agree to pay Lender's reasonable costs for collection, including all reasonable attorney's fees, not to exceed the maximum allowed by applicable state law.

**18. CREDIT REVIEW:** Now, and in the future, I authorize Lender at any time to make or order whatever credit investigation or reports Lender feels are necessary and proper to evaluate and re-evaluate my credit or financial standing and/or employment. I authorize Lender to share with credit bureaus, its credit experience with me.

**19. SECURITY:** I have given or will give Lender, a security interest or mortgage ("Security Agreement") on the real or personal property that is my principal or secondary residence which is located at:
5201 Stansfield Dr, Zionsville, PA  18092

("the Security"). I warrant that this Security is the principal or secondary residence of, and owned by, either the Borrower and/or Co-Borrower. The Security Agreement will secure all amounts that I owe under this Agreement and under the Security Agreement. If I have given Lender, or will in the future give Lender, a lien or security interest in any of my property for some other obligation or in some other security agreement, then that property will also secure this Agreement, provided however, that if such property is my principal or secondary residence and is not the Security listed in this Section 19, then such property shall not secure this Agreement regardless of any other agreement between Lender and me.

**20. LENDER'S RIGHT TO FREEZE THE ACCOUNT OR REDUCE MY MAXIMUM CREDIT LINE:** In addition to any other rights Lender has under this Agreement, and subject to applicable law, Lender may either freeze my Account (not permit me to access my Account for additional loan advances) or reduce my Maximum Credit Limit if during the Draw Period any of the following occurs: (a) the value of the Security declines significantly below the value for which it is appraised or valued when the Account was opened; (b) Lender reasonably believes that I will be unable to make the payments required under this Agreement because of a material change in my financial condition; (c) I am in default of any material obligation under this Agreement; (d) Lender is prevented by any governmental action from applying to my Account the ANNUAL PERCENTAGE RATE that is provided for in this Agreement; (e) the priority of Lender's security interest in the Security is adversely affected by governmental action to the extent that the value of the Security is less than 120% of the Maximum Credit Line; or (f) Lender is notified by any appropriate regulatory authority that continued advances would constitute an unsafe and unsound practice. Lender will notify me if my Account is frozen or if my Maximum Credit Limit is reduced. If the reason for such action no longer exists and I would like my credit privileges restored, then it is my responsibility to request Lender to restore these privileges and to provide Lender with evidence, satisfactory to Lender, that such condition(s) no longer exists. If after the review of such evidence and after such other investigation Lender deems reasonable, Lender agrees that the condition(s) resulting in such action no longer exist and that no other condition that would permit such action currently exists, then Lender will restore my credit privileges.

**21. DEFAULT:** Subject to applicable law, I will be in default under this Agreement if any of the following occurs: (a) I fail to make any payment required by this Agreement; (b) the total amount of the unpaid advances exceeds my Maximum Credit Line and I fail to repay the excess amount when Lender requests payment; (c) any material statement in my application for credit, this Agreement, the Security Agreement or any other document I give Lender at any time with respect to this Account was, or is, false, misleading or fraudulent; (d) all borrowers have died; (e) I, or any owner of the Security, do not obtain and maintain the required property insurance and, if applicable, flood insurance on the Security; (f) the Security is condemned, in whole or in part, or is subjected to an eminent domain proceeding; (g) taxes, maintenance charges, common charges, assessments or any other charges that are liens on the Security are not paid when due; (h) the Security is sold or transferred without the consent of Lender; (i) a lien is permitted to be filed or placed on the Security which lien is superior to the lien of the Security Agreement; or (j) a lien which is superior to the lien of the Security Agreement is in foreclosure or Lender reasonably expects the lien to be foreclosed or the debt which such lien secures is in default.

**22. LENDER'S RIGHTS WHEN A DEFAULT IS DECLARED:** Once a default has occurred, whether or not Lender has declared the Account to be in default, Lender may, but is not required to, suspend the Account without notice to me, refuse to allow me to use the Account to make further advances and declare the entire balance then outstanding under the Account to be immediately due and payable. Lender may also begin to foreclose the lien of the Security Agreement as provided by law and/or the Security Agreement. This means that after legal proceedings, Lender may have the Security sold at my expense, in order to pay Lender what I owe it under this Agreement. The money remaining after all foreclosure and sale related expenses are paid is to be applied against the amounts then due Lender under this Agreement and I understand that I remain liable for any balance due under this Agreement if the money remaining is not enough to fully pay the amount due to Lender, plus its legal expenses, court costs, alternative dispute resolution expenses, and other expenses incurred in bringing the foreclosure action, as permitted by applicable state law. At any time after the suspension or acceleration of the Account, Lender has the sole right to reinstate the Account in accordance with its current procedures, without in any way waiving any rights Lender has under this Agreement.

**23. SALE OR TRANSFER OF THE SECURITY OR ADDITIONAL MORTGAGES:** If I sell or transfer ownership of the Security or enter into a contract to sell or transfer any ownership of the Security without the consent of Lender, then I will be in default and Lender may exercise all rights under Section 22. If I place another mortgage on the Security or otherwise further encumber it, then Lender may suspend my credit privileges and refuse to honor requests for a loan advance.

**24. CHANGE OF TERMS:** Subject to applicable law, Lender may not change the terms of this Agreement except (a) upon my written agreement, (b) if the change is insignificant or (c) if the change will unequivocally be to my benefit. Lender will notify me of all changes prior to the effective date of those changes.

**25. ASSIGNMENT:** I may not assign my Account privileges or delegate my obligation to repay amounts that I owe Lender to any other person without Lender's written consent. I understand that any attempt to assign such privileges or delegate such obligations without Lender's consent will be void and of no effect. This Agreement obligates me and my heirs and personal representatives. Lender may assign this Account at any time without my consent. If this Account is assigned by Lender, I will be given notice as required by applicable law.

**26. WAIVER:** Lender can waive or decline to enforce any of Lender's rights under this Agreement at any time without affecting any of Lender's rights under this Agreement. Without in any way limiting the preceding sentence, Lender does not have to tell me if any amount owing under this Agreement is not paid by the date it becomes due.
In addition, Lender can do any of the following things without telling me and without losing any of Lender's rights against me or the Security: (a) accept as partial payment a check marked "Paid in Full" or with similar language as payment for any amount owing under this Agreement.; (b) give additional time for payment of any amount owing under this Agreement; or (c) exercise, delay exercising or give up any right against any person. In addition, Lender may delay enforcing any of Lender's rights under this Agreement or the Security Agreement or any other related rights without losing them. Any waiver by Lender of any other such rights will not be a waiver of those rights on any other occasion.

**27. JOINT ACCOUNTS:** If more than one person signs this Agreement, then this is a joint account and each signer will be individually responsible and liable for the entire account balance. Upon written request by any party to the Account or upon receipt of inconsistent written instructions, Lender may, at its sole option and without notice to any other party, refuse any request for a loan advance or for an increase in the Maximum Credit Line or refuse any other request with respect to the Account. Regardless of this, in the absence of a court order, Lender may, without liability on Lender's part, honor any request with respect to the Account from any Borrower or Co-Borrower in spite of Lender receiving inconsistent instructions or request.

**28. NOTICES:** I understand that I must notify Lender immediately in writing of any change in my financial or employment condition or change of address as shown on my application, as well as any judgment, lien, attachment or execution if issued against me or my property (including the Security). I also agree to notify Lender immediately with respect to a default on any other mortgage or agreement relating to the Security or if I move from the Property. All notices and monthly statements will be delivered to me at the Security address or at such other address as I may designate by notice to Lender. Notices sent to the address will be effective for all purposes under this Agreement.

**29. FIRST MORTGAGE:** I warrant and represent that (a) I will deliver to Lender complete copies of the First Mortgage(s) affecting the Security and the notes secured thereby; (b) all such First Mortgages are in full force and effect without default; and (c) the recording of the Security Agreement or other aspects of this transaction will not cause a default under that First Mortgage. I agree not to modify or extend the First Mortgage without the prior written consent of Lender, and agree to pay when and as due all amounts due under the First Mortgage and keep all promises made in the First Mortgage.

**30. ENTIRE AGREEMENT; CONTINUED EFFECTIVENESS:** I understand that this Agreement is the entire Agreement between Lender and me, and it may not be contradicted by evidence of any alleged oral agreement. **Oral agreements or commitments to loan money, extend credit or renew such debt are not enforceable. To protect me (borrower(s)) and you (Lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.** If any part of this Agreement is determined by a court to be invalid, the rest will remain in effect.

**31. APPLICABLE LAW:** This Agreement and my Account will be governed by, and interpreted under, federal law to the fullest extent possible. To the extent federal law does not apply, then this Agreement and my Account shall be governed by, and interpreted under the state law where the property is located, whether or not I live in that state.

**Questions and Billing Errors:**

I will let Lender know immediately if I have any questions about my Statement. I can call Lender at the telephone number appearing on the Statement if I think Lender has made a mistake on my Statement. I will read and follow the Fair Credit Billing Act Notice, printed below, concerning my rights to dispute billing errors. Also, a statement of my rights will either appear on the back of each Statement or be sent to me annually.

I agree to the terms of this Agreement and the Security Agreement and acknowledge that I have each, individually and separately, received a copy of this Agreement, two copies of the Notice of Right to Cancel (if applicable) and a copy of the Security Agreement, all completely filled in.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

_____ 04/13/2007
Frank E. Torok                 Borrower

_____ 04/13/2007
Joann M. Torok                 Borrower

_____
                               Borrower

_____
                               Borrower

**WITHOUT RECOURSE**
Pay To the Order of
**GMAC BANK**
QUICKEN LOANS, INC.
By_____
SCOTT JOHNSON
CAPTURE MANAGER

PAY TO THE ORDER OF
WITHOUT RECOURSE
_____
D. HARKNESS
ASSISTANT SECRETARY
GMAC BANK

## PENNSYLVANIA SECONDARY MORTGAGE LOAN
## NOTE ADDENDUM

### NOTICE TO BORROWER

*This agreement is subject to the provisions of the Secondary Mortgage Loan Act.*

_____ 04/13/2007   _____ 4-13-07
Frank E. Torok         date                                date

_____ 04/13/2007   _____ 4-13-07
Joann M. Torok         date                                date